United States District Court
Southern District of Texas
**ENTERED**
September 17, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ADA LEE WHITMIRE,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:23-cv-2136 |
| § | |
| **MARTIN O'MALLEY,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION

Plaintiff Ada Lee Whitmire ("Plaintiff") filed this lawsuit against Defendant Martin O'Malley ("Commissioner") seeking review of the denial of benefits under Title II and Title XVI of the Social Security Act. (ECF Nos. 1, 15).[1] Pending before the Court are the Parties' cross-motions for summary judgment. (ECF Nos. 13, 15).[2] Based on a review of the motions, arguments, and relevant law, the Court **GRANTS** the Commissioner's Motion for Summary Judgment (ECF No. 13), **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 15), and **DISMISSES** the action with prejudice.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] The parties consented to proceed before a Magistrate Judge for all proceedings under 28 U.S.C. § 636(c). (ECF No. 10).

## I.   Background

Plaintiff filed an application for child disability benefits on December 18, 2019, and filed a Title II disability insurance benefits claim and Title XVI supplemental security income claim on March 12, 2020, alleging disability starting on May 16, 2017.  (ECF No. 8-3 at 20; ECF No. 15 at 4).[3] Administrative Law Judge William B. Howard (the "ALJ") changed the alleged disability onset date to October 12, 2010, upon Plaintiff's amended application. (ECF No. 8-3 at 20–21).  Plaintiff's claims were initially denied by the Social Security Administration on November 9, 2020, and again on reconsideration on April 6, 2021.  (*Id.* at 20).  On June 5, 2021, Plaintiff requested a hearing before an Administrative Law Judge.  (*Id.*).  On October 13, 2022, Plaintiff appeared and testified via telephone for a hearing before the ALJ.  (*Id.*). Plaintiff was represented by counsel, Donald Dewberry, at the hearing.  (*Id.* at 20).   Plaintiff's family friend, Rhonda Davis, appeared and testified via telephone at the hearing.  (*Id.*).

On November 1, 2022, the ALJ issued a decision, finding Plaintiff not disabled at Step Five of the evaluation process.[4]  (*Id.* at 37).  At Step One, the

---

[3] The Administrative Record in this case can be found at ECF No. 8.

[4] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

2

ALJ found Plaintiff had not engaged in substantial gainful activity since October 12, 2010, the amended alleged onset date. (*Id.* at 23). At Step Two, the ALJ found Plaintiff has the following severe impairments: "[m]ultiple sclerosis; obesity; social anxiety disorder; attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c))." (*Id.*). At Step Three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 24). The ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to:

> perform light work. Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday with normal breaks. The claimant should never be required to work in proximity to hazards or climb ropes, ladders, or scaffolds. The claimant is limited to simple repetitive one to three step tasks. Due to her social limitations, the claimant should have no more than only occasional interactions with coworkers and supervisors. She should be limited to no more than incidental interactions with the public. Due to the claimant's limitations in adapting to change she should be limited to no more than only occasional changes in the work setting.

---

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

(*Id.* at 28). At Step Four, the ALJ found Plaintiff has no past relevant work. (*Id.* at 35). Finally, at Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform—such as routing clerk, photocopy machine operator, and housekeeping cleaner—and therefore Plaintiff was not disabled as defined under the Social Security Act. (*Id.* at 35–37).

Plaintiff appealed to the Appeals Council and the Appeals Council denied Plaintiff's request for review on March 9, 2023. (*Id.* at 2). Thus, the ALJ's decision represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

## II. Legal Standard

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798

F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues de novo, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

5

## III. Discussion

Plaintiff asserts two points of error. First, Plaintiff argues the ALJ failed to properly develop the record regarding Plaintiff's intellectual impairment. (ECF No. 15 at 5). Second, Plaintiff argues the ALJ's mental limitation RFC finding is not supported by any medical opinion of record and the ALJ fails to properly consider the relapsing and remitting nature of Plaintiff's multiple sclerosis ("MS"). (*Id.*).

### A. Duty to Develop

Plaintiff argues the ALJ did not properly develop the record. (ECF No. 15 at 6). Specifically, Plaintiff contends evidence indicates an intellectual disability and a suggestion that Plaintiff would benefit from a full psychological evaluation was sufficient to inform the ALJ that a full psychological evaluation was needed. (*Id.* at 7). The Commissioner argues the ALJ met his duty to fully and fairly develop the record. (ECF No. 17 at 4).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "If the ALJ does not satisfy his duty, his decision is not substantially justified." *Id.* "The ALJ must order a consultative exam 'only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.'" *Muhleisen v. Soc. Sec. Admin.*, No. 23-cv-

1064, 2024 WL 139525, at *6 (E.D. La. Jan. 12, 2024) (quoting *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021)). It is within the discretion of the ALJ whether to order a consultative evaluation. *Robinson v. Barnhart*, 183 F. App'x 451, 455 (5th Cir. 2006)

Here, the ALJ went through a lengthy discussion regarding the severity of Plaintiff's mental impairments and found Plaintiff's mental impairments did not meet or equal the severity of a listed impairment. (*See* ECF No. 8-3 at 25–28). For instance, the ALJ discusses a September 14, 2020, consultative psychiatric evaluation Plaintiff already participated in with Dr. Kenneth S. Arfa ("Dr. Arfa"). (*Id.*). During the consultative psychiatric evaluation, Dr. Afra found Plaintiff's "mental status exam demonstrated that her thought process and stream of mental activity was goal directed" and Plaintiff "was alert and oriented to time, place, and person." (*Id.* at 25). However, Dr. Afra also found Plaintiff had "[p]oor intellect," but the ALJ noted Dr. Afra did not elaborate on this finding. (*Id.*). Dr. Afra also found Plaintiff's "mental status exam revealed no suicidal or homicidal ideation, nor did the claimant demonstrate that she was experiencing hallucinations." (*Id.* at 26). Dr. Afra noted Plaintiff's difficulty in spelling, but the ALJ discusses Plaintiff had no problem getting tasks done in a timely and appropriate manner. (*Id.*).

7

Further, a "[m]ore recent mental status examination of the claimant during her treatment at the [Tri-County Mental Health and Mental Retardation ("MHMR")] has demonstrated that her thought processes are coherent. . . . [Plaintiff]'s orientation was intact, as was her memory. [And Plaintiff] had an average fund of knowledge." (*Id.* at 25, 27). At Plaintiff's mental health treatment at the MHMR on February 10, 2022, Plaintiff "was noted to have good eye contact and she projected her voice well (she was noted to not be as quiet/meek as in some past appointments)." (*Id.* at 26). During Plaintiff's treatment at the MHMR, she "demonstrated that her thought processes are coherent, with no abnormal associations" and Plaintiff's "attention and concentration have been intact." (*Id.* at 27).

The ALJ addresses Plaintiff's consultative evaluation with Dr. Afra and her treatment at the MHMR in more detail than the Court discusses here, magnifying the sufficiency of the record developed by the ALJ concerning Plaintiff's mental limitations. (*See id.* at 25–28). It is clear the ALJ did not err in developing the record and Plaintiff has not shown that another psychological evaluation was necessary to enable the ALJ to make a decision. *See Muhleisen*, 2024 WL 139525, at *6 ("ALJ Hansen had a wealth of medical records relating to both plaintiff's physical and mental conditions, including an exam by a psychological evaluator, Dr. Skellie, and plaintiff's counselor, Gina

8

Roussel. The record was sufficiently developed for the ALJ to make an informed decision with respect to plaintiff's claim for benefits, and plaintiff has not shown that the argued for neuropsychological exam was necessary to enable the ALJ to make a decision."). Accordingly, the Court finds the ALJ did not err in developing the record with respect to Plaintiff's mental limitations.

### B. RFC

Plaintiff argues the ALJ fails to properly consider the relapsing and remitting nature of Plaintiff's MS and the ALJ's RFC determination is not supported by any medical opinion of record.[5] (ECF No. 15 at 7). The Commissioner argues Plaintiff fails to show the ALJ did not properly consider her relapsing and remitting MS when formulating the RFC for light work. (ECF No. 17 at 9).

First, Plaintiff argues the ALJ failed to properly consider the relapsing and remitting nature of Plaintiff's MS because the ALJ's RFC is based on periods of remission and does not account for Plaintiff's ability to work over a longitudinal period. (ECF No. 15 at 8–9).

---

[5] Plaintiff argues the ALJ's *mental limitation* RFC finding is not supported by substantial evidence regarding Plaintiff's relapsing and remitting MS. (ECF No. 15 at 7). However, the body of Plaintiff's argument does not refer to solely mental limitations. (*Id.* at 7–11). As such, the Court will analyze Plaintiff's argument without a narrow focus on only mental limitations.

9

The Fifth Circuit has determined the ALJ is not required to make a specific finding that a claimant has the ability to maintain employment in every case. *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). Whether a claimant is capable not only of obtaining, but also maintaining employment, "requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms.'" *Id.* (quoting *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)); *see Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002). "[I]n order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Frank*, 326 F.3d at 619. "Without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Perez*, 415 F.3d at 465. For instance, the *Frank* court offered an example of evidence that may "necessitate a separate finding of a claimant's ability to maintain employment: 'For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination.'" *Id.* (quoting *Frank*, 326 F.3d at 619). Plaintiff does not make the requisite showing.

Here, Plaintiff does not offer evidence showing her relapsing and remitting MS waxes and wanes, affecting her ability to maintain employment. The only evidence Plaintiff points to are website links to webmd.com. (ECF No. 15 at 8). Plaintiff uses these links to show relapsing and remitting MS "consists of attacks, where symptoms flare up, and periods of 'remission,' in which only a few symptoms are present." (*Id.*). The issue is that Plaintiff does not cite to evidence of *her* symptoms waxing and waning. (*See id.*). Further, Plaintiff cites to the ALJ's decision where he explained Plaintiff is able to play games at times, maintains a significant deal of dexterity when using her hands, Plaintiff's MS is stable with treatment, and Plaintiff's MS seems to be improving. (*Id.*). Instead of showing that her relapsing and remitting MS symptoms waxes and wanes, Plaintiff relies on general research and webmd.com to support her position. (*Id.*). Because Plaintiff fails to make the requisite showing, Plaintiff's ability to maintain employment is subsumed in the RFC determination. *See Perez*, 415 F.3d at 465. Accordingly, the Court finds the ALJ did not err in finding Plaintiff can maintain employment.

Next, Plaintiff argues the ALJ's RFC determination that Plaintiff can perform the standing, walking, lifting, and carrying requirement for light work is not supported by any medical opinion of record. (ECF No. 15 at 9). The

11

Commissioner argues the ALJ properly found Plaintiff could perform light work. (ECF No. 17 at 5).

"RFC is what an individual can still do despite her limitations." *Harris v. Comm'r, Soc. Sec. Admin.*, No. 4:22-cv-487, 2023 WL 5826869, at *3 (N.D. Tex. Aug. 22, 2023), *report and recommendation adopted*, No. 4:22-cv-00487, 2023 WL 5826975 (N.D. Tex. Sept. 8, 2023). "The responsibility for determining a claimant's RFC lies with the ALJ." *Id.* "The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Id.* "In making the RFC assessment, the ALJ must consider all symptoms . . . and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *Id.* (citing 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017)). "The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

Here, the ALJ found Plaintiff has the RFC to perform light work and that plaintiff "can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday with normal breaks." (ECF No. 8-3 at 28). Plaintiff argues no examining physician of record agrees

with this RFC determination. (ECF No. 15 at 9). For example, Plaintiff states her "treating nurse practitioner, Carisa Richter, PA-C, opines that Plaintiff is permanently disabled and can lift no more than 5 pounds for no more than 2 hours per day." (*Id.*). Further, Plaintiff points to Dr. Milton Kirkwood's ("Dr. Kirkwood") examination where he noted "while Plaintiff was able to perform tandem walking, she was 'wobbly' when doing so" and "Plaintiff had a mild tremor in her left hand." (*Id.*). After examination, "Dr. Kirkwood opined that the claimant can sit and stand for short periods of time, and she can move about. . . . Further, she can lift light objects, carry and handle objects." (ECF No. 8-3 at 31). However, the ALJ explained:

> Dr. Kirkwood's opinion that the claimant can sit and stand for "short periods", and that she can "move about", lift and carry "light" objects, and carry and handle objects, as well as his opinion that her strength is maintained, is so vague and undescriptive that this portion of his opinion is not persuasive. Absent a more detailed description of the claimant's limitations, or perhaps a definition of some of the vague terms in Dr. Kirkwood's opinion such as "short", or "maintained", his opinion in these areas is unpersuasive.

(*Id.*).[6]

---

[6] Plaintiff also argues, "the ALJ could have developed the record by recontacting Dr. Kirkwood for clarification or could have ordered another consultative examination." (ECF No. 15 at 9–10). However, "[t]he ALJ must order a consultative exam 'only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.'" *Muhleisen*, 2024 WL 139525, at *6 (quoting *Webster*, 19 F.4th at 720). Here, it is clear there is enough record evidence for the ALJ to make a decision, as the ALJ did not rely solely upon Dr. Kirkwood's opinion.

However, Plaintiff fails to acknowledge Dr. Kirkwood's opinion that Plaintiff's "upper extremities were found to be within normal limits, with her muscle tone in her biceps, triceps, and forearm muscles being normal, with no bony abnormalities or joint abnormalities," Plaintiff "had good extension of her lower legs against gravity, good dorsiflexion and plantar flexion of the feet and toes, and there were no joint abnormalities," "[n]eurologically, [Plaintiff]'s grip strength was 5/5, and her lower extremity strength was 5/5, i.e., normal," "[t]here is no persistent disorganization of motor function. . . . There is no abnormality in her gait," and Plaintiff "did not use an assistive device such as a cane or crutch to walk with [and Plaintiff]'s ability to grip, reach, handle, finger and feel was found to be unencumbered." (*Id.* at 30–31). The ALJ analyzes the persuasiveness of Dr. Kirkwood's opinion by explaining:

> Stating that the claimant's ability to grip, handle, finger, and feel is unencumbered is a discernable limitation, as this is essentially the same thing as stating that the claimant has no limitations in these areas, and this finding is persuasive, as it is supported by Dr. Kirkwood's own exam findings of the claimant having no significant functional limitations in her upper extremities with full grip strength, and it is consistent with her exam findings during treatment.

(*Id.* at 31). It is clear the ALJ relied upon medical opinions and medical evidence in determining Plaintiff's RFC. (*See id.* at 30–31). The ALJ did not "pick and choose" which medical evidence supported his determination, but

14

rather explained in detail why he found certain evidence and opinions persuasive. Even so, the ALJ does not solely rely upon Dr. Kirkwood's medical opinion. For instance, the ALJ cites to a medical report by Dr. Jeffrey Ebin where he notes Plaintiff has a full range of motion and no swelling in her upper extremities, lower extremities, and wrists. (*Id.* at 29 (citing ECF No. 8-8 at 756)). As such, the ALJ's RFC determination that Plaintiff can perform light work is supported by substantial evidence.

## IV. Conclusion

Based on the foregoing, the Court **GRANTS** the Commissioner's Motion for Summary Judgment (ECF No. 13), **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 15), and **DISMISSES** the action with prejudice.

**SIGNED** in Houston, Texas on September 17, 2024.

Richard W. Bennett
United States Magistrate Judge